SCHOTT, Judge.
This is a suit by plaintiff, Bertha Hicker-son, against her insurer, Protective National Insurance Company of Omaha, under the uninsured motorist provisions of Protective’s policy. Protective has appealed from a judgment (1) in favor of plaintiff against Protective for $3,000, (2) in favor of Louisiana Insurance Guaranty Association (LIGA), as defendant, and third-party defendant dismissing Protective’s third-party demand against LIGA, and (3) in favor of Essie Simmons and Elizabeth Roberson as defendants and third-party defendants dismissing Protective’s claims against them. Plaintiff, Bertha Hickerson, has answered the appeal with respect to that part of the judgment which dismissed her claim against LIGA. At issue are the liability of Protective as uninsured motorist carrier under the provisions of the policy providing for cover *971 age to its insured in the event that the tort feasor’s liability carrier is insolvent, the right of Protective to proceed against LIGA where Protective is cast in judgment to its insured under the insolvent insurer provisions of the uninsured motorist coverage of Protective’s policy, and Protective’s right to proceed against the tort feasor for reimbursement under the circumstances.
The case was tried on a stipulation of facts. Plaintiff was injured in an accident which occurred in December, 1974, as a result of the negligence of Essie Simmons and Elizabeth Roberson. Plaintiff’s damages amounted to $3,000. Plaintiff was insured by Protective, an insurer authorized to do business in Louisiana, for automobile liability, on a policy which provided uninsured motorist protection with maximum limits of $5,000 per person. At the time of the accident Essie Simmons and Elizabeth Roberson were insured by Manchester Insurance & Indemnity Company for liability in the accident. The stipulation also admitted the authenticity of a number of documents which concern the following events:
On September 23, 1975, an order was entered by the court in Franklin County, Ohio, appointing the Superintendent of Insurance for the State of Ohio “Conservator” of Manchester “for the purpose of rehabilitation or liquidation . . . .” On October 15 by judgment of the Nineteenth Judicial District Court for the Parish of East Baton Rouge, the Louisiana Commissioner of Insurance was appointed “Ancillary Conservator” with authority “to conserve the assets of [Manchester] and to proceed to conduct the business and affairs of [Manchester].” On February 13,1976, after taking evidence the Ohio court declared Manchester insolvent, which judgment became final in Ohio on July 8, 1977, when the Supreme Court of Ohio dismissed Manchester’s appeal. Until this final judgment LIGA consistently took the position that it had no liability in place of Manchester because there had not yet been a determination that Manchester was insolvent by a court of competent jurisdiction.
The basis for Protective’s liability to plaintiff is the following definition of an uninsured automobile in its policy:
“. An insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified in the coverage because of insolvency . . . .”
This provision is pursuant to the requirements placed on automobile liability insurers by LSA-R.S. 22:1406:
“(2)(a) For the purpose of this coverage, the terms ‘uninsured motor vehicle’ shall, subject to the terms and conditions of such coverage, be deemed to include motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency.”

“(3) An insurer’s insolvency protection shall be applicable only to accidents occurring during a policy period in which its insured’s uninsured motorist coverage is in effect where the liability insurer of the tort feasor becomes insolvent within one year after such an accident. Nothing herein contained shall be construed to prevent any insurer from affording insolvency protection under terms and conditions more favorable to its insureds than is provided hereunder.”
Terms “insolvency” and “insolvent” are not defined in R.S. 22:1406 which has to do with the uninsured motorist coverage. However, the following definition is found in R.S. 22:1379 of the Insurance Guaranty Association Law:
“(4) ‘Insolvent insurer’ means (a) an insurer authorized to transact insurance in this state either at the time the policy was insured or when the insured event occurred and (b) determined to be insolvent by a court of competent jurisdiction.”
Relying on this definition, Protective argues that Manchester did not become insolvent until the final judgment of the Ohio *972 Supreme Court in July, 1977, or at the earliest in February, 1976, when the trial court in Ohio declared Manchester to be insolvent. Therefore, Protective asserts that its uninsured motorist protection was inapplicable because Manchester did not become insolvent within one year after the date of the accident (in December, 1974) as provided by R.S. 22:1406 subd. D(3). Protective maintains that principles of statutory construction require that the definition in the Insurance Guaranty Association Law should apply to the uninsured motorist provisions since the latter contains no definition of insolvency and since both are a part of the general Louisiana Insurance Code.
The Insurance Guaranty Association Law, R.S. 22:1375 to 1394, was added to the Insurance Code by Act 81 of 1970, and has for its stated purpose the following from R.S. 22:1376:
“The purpose of this Part is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.”
On the other hand, R.S. 22:1406, subd. D(2)(a) and (3) were placed in the Insurance Code by Act 187 of 1962. In Booth v. Fireman's Fund Insurance Company, 253 La. 521, 218 So.2d 580 (1968) the intent of this act was said to be “to afford protection to the insured when they become the innocent victims of the negligence of uninsured motorists.” In Elledge v. Warren, 263 So.2d 912 (La.App. 3rd Cir. 1972), writ refused 262 La. 1096, 266 So.2d 223, the court stated that the uninsured motorist statute must be liberally construed to carry out the objective of providing compensation for those injured through no fault of their own.
We fail to see how a definition from the Guaranty Association Law must control the legislature’s purpose in the passage of the insolvent insurance company’s provisions in the uninsured motorist statute when we consider that this statute was already on the books for eight years before the passage of the Guaranty Association Law, and considering that the uninsured motorist statute has a broad purpose emanating from the public policy of the state as compared to the limited purpose of the Insurance Guaranty Association Law.
For a state of insolvency to exist under the uninsured motorist provisions of the law does not require the judicial determination of insolvency as required by the Insurance Guaranty Association Law. Obviously an insurance company may be insolvent long before a judicial decree to that effect following the delay inherent in the adversary process. R.S. 22:1406, subd. D(2)(a) provides liability and attaches to the uninsured motorist carrier where the liability insurer “is unable to make payment . . . because of insolvency.”
Plaintiff had the burden of proving that Manchester became insolvent within a year after the accident in December, 1974. The filing of the proceedings against Manchester in Ohio took place in September, 1975, and those proceedings ultimately ended with an adjudication of insolvency against Manchester in February, 1976. It is more probable than not that Manchester was insolvent when the proceedings were filed nine months after the date of the accident sued on in this case. In any event, this evidence established a prima facie case of insolvency against Manchester as of September, 1975, and the burden was on Protective to prove that Manchester was not insolvent so as to insulate it from liability under the uninsured provisions of the code.
Considering the policy that the uninsured motorist provisions of the law should be liberally construed in favor of the insured, it is appropriate for this burden of proof to be placed on Protective to prove that insolvency did not exist, rather than on plaintiff to prove that it did, once plaintiff proved that the proceedings were instituted against Manchester well within one year after the date of the accident.
*973 The next issue is Protective’s claim against LIGA for reimbursement of the $3,000 for which it is liable to plaintiff. R.S. 22:1386 provides:
“(1) Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this Part shall be reduced by the amount of any recovery under such insurance policy.”
Since this provision in effect required the plaintiff to exhaust her recovery against Protective before LIGA could become liable to plaintiff it would defeat the purpose to permit Protective as a subrogee of plaintiff, having paid plaintiff’s claim, to recover the same amount from LIGA.
We now come to the third issue in the case, which is perhaps the most difficult conceptually to resolve. Protective filed a third-party demand against the tort feasors, Essie Simmons and Elizabeth Roberson, as the subrogee of plaintiff to the extent of $3,000. The trial court dismissed this claim and LIGA has defended this aspect of the judgment, arguing again that to permit Protective to recover from the tort feasor would defeat the purpose of the Insurance Guaranty Association Law.
Protective’s right to assert its claim for the amount paid to plaintiff under the uninsured motorist’s provisions of its policy is based upon C.C. Art. 2161’s provision for subrogation. Hartford Accident & Indemnity Company v. Byles, 280 So.2d 624 (La. App. 3rd Cir. 1973); see also, Hebert v. Green, 311 So.2d 223 (La.1975). We are unable to conclude that the legislature intended to deprive Protective of that right in the absence of some specific expression to that effect. This position seems particularly secure when the procedural background of this case is considered. Long before LIGA became a party to this suit Protective had responded to plaintiff’s claim with a third-party demand against the tort feasors for reimbursement in the event that it would be cast in judgment unto plaintiff. In effect, LIGA takes the position that it may inject itself into a perfectly legal claim by Protective against the tort feasors and somehow prevent Protective from asserting its claim. If the legislature intended such an unusual result some specific statutory direction was in order. We are also impressed with the argument of Protective that LIGA’s position would lead to confusion and uncertainty in the absence of some specific legislative guide lines on the point. For example, the act applies only to insolvent insurers who are authorized to do business in the State of Louisiana. It has no application to unauthorized insurers, such as surplus line carriers. Conceding LIGA’s position for the sake of discussion, an uninsured motorist carrier made to pay by virtue of the insolvency of the insurer of the tort feasor would have a right to reimbursement from the insured of the company which was not authorized but would be prevented from the same recovery in the event that that insured was an authorized carrier.
Finally, we are not convinced that the overall purpose of the Insurance Guaranty Association Law encompasses the result which LIGA seeks in this case. Under R.S. 22:1382(l)(c)(l) LIGA has the authority to assess authorized insurers for their proportion and share of any claims which were paid as a result of the insolvency of an authorized carrier. The amount of the assessment is in the proportion that the direct written premiums of each insurer bears to the direct written premiums of all insurers for the preceding calendar year. This scheme contemplates that the risk of the loss borne by LIGA is to be spread evenly and equitably among all of the authorized insurers. Under this scheme Protective will pay its share of the losses which Manchester’s collapse has caused, including a proportionate share of the particular loss involved in this case. Under LIGA’s theory *974 Protective would be compelled to take the entire $3,000 loss, not because the statute so directs but because it would have us deprive Protective of its statutory right to a claim in subrogation for reimbursement against the tort feasors.
When insurance companies, such as Protective, arrive at a rate structure for uninsured motorist’s protection, their underwriters must have considered the possibility of collection of amounts paid under the uninsured motorist’s provisions from the tort feasors at least in a small percentage of the cases. It seems unfair to engraft on that underwriting procedure, after the fact, a judicial pronouncement that in the case of a tort feasor who brings LIGA into the picture such a collection is prohibited. It would be more orderly for the legislature to set forth such requirements and allow the insurers to consider them in advance of the formulation of their rates for uninsured motorists protection.
Accordingly, that portion of the judgment appealed from in favor of third-party defendants, Essie Simmons and Elizabeth Roberson, and against third-party plaintiff, Protective National Insurance Company of Omaha, is reversed and set aside, and there is judgment in favor of third-party plaintiff, Protective National Insurance Company of Omaha, and against third-party defendants, Essie Simmons and Elizabeth Roberson, in the sum of $3,000. In all other respects, the judgment is affirmed.
REVERSED IN PART; AFFIRMED IN PART.