[No. C061042. Third Dist. Aug. 21, 2009.]

LANCE BAUR, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and CITY OF
STOCKTON, Respondents.

## COUNSEL

Mastagni, Holstedt, Amick, Miller & Johnsen and Andy Kirk for Petitioner.

No appearance by Respondent Workers' Compensation Appeals Board.

Law Office of Matthew Brueckner and Matthew Brueckner for Respondent City of Stockton.

## OPINION

**ROBIE, J.**—Under Labor Code section 3861, the employer of an injured employee is entitled to a credit against the employer's liability for future workers' compensation benefits out of "any recovery" the employee receives for his injury, either by settlement or after judgment, from a third party tortfeasor.

In this case, petitioner Lance Baur, a police officer employed by respondent City of Stockton (the city), was injured on the job during an altercation with suspect Richard Thomas Beck. The city provided Baur workers' compensation benefits. Baur then filed a lawsuit against Beck, but Beck's insurance company was insolvent. As a result, Baur settled his lawsuit with the California Insurance Guarantee Association (CIGA).[1] The city then claimed a credit pursuant to Labor Code section 3861, up to the amount of the net settlement, against its liability for future workers' compensation benefits. A workers' compensation administrative law judge granted the credit.

Baur argues to this court that since CIGA is not permitted to pay for claims covered by other insurance (Ins. Code, §§ 1063.2, subd. (a), 1063.1, subd. (c)(9)), it was improper to grant the city a credit under Labor Code section 3861 against its liability for future workers' compensation benefits resulting from Baur's injuries.

---

[1] "CIGA was established to protect members of the public from the insolvency of insurers by spreading throughout the industry a loss suffered by an insured as the result of the insolvency of an insurer." (*Black Diamond Asphalt, Inc. v. Superior Court* (2003) 114 Cal.App.4th 109, 118 [7 Cal.Rptr.3d 466].) It "is funded by insurance companies that do business in California." (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (1992) 10 Cal.App.4th 988, 994 [12 Cal.Rptr.2d 848].)

Baur's reasoning appears to be as follows: A judgment or settlement paid by a solvent insurer can include money for future medical costs (which are covered by workers' compensation), and thus applying the credit in that circumstance simply requires the employee to pay for future medical costs with money received for that purpose. When CIGA is involved, however, a judgment or settlement paid by CIGA cannot include future medical costs (because those costs are covered by workers' compensation). Thus, applying the credit would require the employee to pay for future medical costs with money received for an entirely different purpose, such as to compensate for pain and suffering. In Baur's view, this essentially requires CIGA to indirectly pay for future medical costs in violation of the Insurance Code provisions governing CIGA.

Baur is partially correct. Applying the Labor Code section 3861 credit to a settlement or judgment paid by CIGA will require the employee to pay for future medical costs with money received from CIGA for another purpose. As we will explain, however, this result does not violate the governing Insurance Code provisions, and it is compelled by the plain language of section 3861, which mandates a credit against "any recovery."

## FACTUAL AND PROCEDURAL BACKGROUND

Officer Baur was employed by the city in August 2003 when he was injured on the job by suspect Beck. As a result of Baur's injuries, the city provided Baur with $74,408.79 in workers' compensation benefits.

Baur then filed a civil lawsuit against Beck, and the city filed a lien in the lawsuit, seeking reimbursement for workers' compensation benefits in the amount of $73,340.69.

Beck's insurance carrier, Vesta Fire Insurance Company (Vesta), became insolvent, so CIGA stepped in on behalf of Vesta. In settlement of the lawsuit, CIGA agreed to pay $50,000 to Baur, and the city agreed to release its lien.[2]

In light of the settlement, the city advised Baur that it was entitled to a credit against its liability for future workers' compensation benefits up to $50,000.

---

[2] The settlement stated as follows:

"The parties having mediated the above claim hereby settle the case for $50,000. The defense will prepare a release and dismissal for execution upon receipt of said consideration.

"The above settlement is contingent on N/A; The parties believed CIGA pays only amount of case which exceeds city's comp lien of $73,340.69. Negotiated value of case is $123.240.69 or $50,000 new."

The settlement was signed by the mediator, Baur, Baur's attorney, Beck, Beck's attorney, and a representative of CIGA.

Baur objected to the credit, claiming the city "has no credit rights in this matter for the same reasons . . . it has no lien rights." Specifically, Baur asserted that the credit was not allowed because the Insurance Code prohibits subrogation on a settlement paid by CIGA.

The workers' compensation administrative law judge held that the Labor Code specifically allowed the credit, finding that "CIGA is not involved nor a party to this [workers' compensation] action." The judge calculated the credit to which the city was entitled after costs and attorney fees were deducted from the $50,000 recovery from CIGA was $30,909.44.

Baur sought reconsideration by the Workers' Compensation Appeals Board. It denied reconsideration, adopting the reasoning of the judge.

Baur petitioned this court for a writ of review. We issued the writ to determine the legality of the credit awarded here.

## DISCUSSION

Labor Code section 3861 grants an employer the right to a credit against its liability for compensation as follows: "The appeals board is empowered to and shall allow, as a credit to the employer to be applied against his liability for compensation, such amount of any recovery by the employee for his injury, either by settlement or after judgment, as has not theretofore been applied to the payment of expenses or attorneys' fees, pursuant to the provisions of Sections 3856, 3858, and 3860 of this code, or has not been applied to reimburse the employer."

Here, part of Baur's recovery for his injuries included the $50,000 from CIGA for settlement of his lawsuit against Beck. This qualifies as "any recovery by the employee for his injury" including "by settlement." (Lab. Code, § 3861.) Under the plain language of Labor Code section 3861, then, the city was entitled to a credit against its liability for future workers' compensation benefits up to the amount of the claim CIGA paid minus attorney fees and costs.

Notwithstanding this analysis, Baur persists that the credit provision of Labor Code section 3861 should not apply to CIGA. He explains that in reaching the settlement, CIGA valued the case at approximately $123,000, and the $50,000 it was agreeing to pay was only for amounts not covered by other insurance. Baur contends that since the $50,000 could not include future medical costs, which is the responsibility of workers' compensation, the credit should not be allowed. Even accepting the factual premise of Baur's argument, the plain language of Labor Code section 3861 defeats that argument.

█ Assume that CIGA structured the settlement to explicitly state the $50,000 it was going to pay Baur was only for general damages, i.e., pain and suffering, something not covered by workers' compensation insurance. After costs and attorney fees, Baur would receive approximately $30,000. Would the city still be entitled to a credit for this $30,000 that it could apply to future medical costs, where the money originally came from CIGA and was for something (pain and suffering) that workers' compensation would never cover? Yes, because Labor Code section 3861 speaks broadly in terms of "any recovery." Specifically, it grants the city a credit for "any recovery" by Baur for his injury that he received by way of settlement. (Lab. Code, § 3861.) This means the city is entitled to a credit whether the tortfeasor's insurer was a solvent company or CIGA and whether the recovery was for general or special damages. The effect of this credit provision is to reduce the cost to the workers' compensation system by making the employee apply any net recovery to pay for future medical costs tied to his injury.

Our interpretation of Labor Code section 3861 is consistent with that of the Workers' Compensation Appeals Board, which spoke to this issue over two decades ago in *Moreno v. Workers' Comp. Appeals Bd.* (1987) 52 Cal.Comp.Cases 57 (*Moreno*).[3] There, a truck driver was fatally injured while employed by a corporation insured by Fremont Indemnity Company (Fremont). Fremont awarded Moreno's wife $85,000 in death benefits. The wife then filed a third party action against the owner of the truck driven by her husband at the time he was injured. The third party's insurer was insolvent, so CIGA stepped in to discharge the insurer's liabilities. The wife and CIGA settled the action, and Fremont applied for a credit for workers' compensation benefits paid. The workers' compensation administrative law judge granted the credit, and the Workers' Compensation Appeals Board denied the wife's petition for reconsideration, adopting the report of the judge. The wife unsuccessfully sought a writ of review, contending that the Insurance Code precluded the credit. The judge explained that Labor Code section 3861 provided a basis for the credit that was not "diminished or extinguished" by the Insurance Code. "Strictly speaking, the assertion of a credit does not involve a disbursement of funds and as such is not contemplated by [the Insurance Code]." (*Moreno*, at p. 58.)

█ Despite *Moreno*, which reflects the policy of the Workers' Compensation Appeals Board since at least 1987, and the plain language of

---

[3] Denials of petitions for writ of review reported in the California Compensation Cases are citable when they "point out the contemporaneous interpretation and application of the workers' compensation laws by the Board." (*Smith v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 530, 537, fn. 2 [94 Cal.Rptr.2d 186].)

the Labor Code, Baur argues for a different result when the insurer is CIGA. Specifically, he notes that as an insurer of last resort (*R. J. Reynolds Co. v. California Ins. Guarantee Assn.* (1991) 235 Cal.App.3d 595, 600 [1 Cal.Rptr.2d 405]), CIGA is required to pay only "covered claims" (Ins. Code, § 1063.2, subd. (a)), which exclude claims for subrogation (*id.*, § 1063.1, subd. (c)(5), (9)) and claims "covered by any other insurance" (*id.*, § 1063.1, subd. (c)(9)). He further notes that Labor Code section 3861 allowing the credit is found in division 4, part 1, chapter 5 of that code entitled "Subrogation of Employer." In support of his position, Baur relies on *California Ins. Guarantee Assn. v. Argonaut Ins. Co.* (1991) 227 Cal.App.3d 624 [278 Cal.Rptr. 23], which interprets Insurance Code section 1063.1.

*Argonaut* held that CIGA has no duty to reimburse a solvent workers' compensation carrier for benefits paid to an injured employee. (*California Ins. Guarantee Assn. v. Argonaut Ins. Co., supra,* 227 Cal.App.3d at pp. 626, 636.) The court explained as follows: "We find the language of Insurance Code section 1063.1, subdivision (c)(4)[4] excluding claims of insurers and that of subdivision [(c)](9) excluding claims by right of subrogation to be clear and unambiguous. . . . [A] claim by an insurer or a claim by right of subrogation is not a 'covered claim.' " (*Argonaut,* at p. 633.) It was this holding that led the city here to release its lien on the settlement in the lawsuit against Beck because the lien was both a claim by an insurer and of subrogation.

Attempting to piggyback on this holding, Baur contends *Argonaut* also prohibits "enforce[ment of] a claim for workers' compensation benefits to be paid *prospectively.*" Baur's contention fails.

The $50,000 that CIGA paid Baur was a covered claim because it was the obligation of an insolvent carrier that met the statutory criteria. (Ins. Code, § 1063.1, subd. (c)(1).) Therefore, CIGA was required to pay it. (*Id.*, § 1063.2, subd. (a).) Once the $50,000 left CIGA's coffers and went into Baur's pocket, CIGA was out of the picture. At that point, regardless of whether the city was entitled to a credit for the amount CIGA paid to Baur, CIGA's coffers would be reduced by $50,000. This is an important distinction between the lien in *Argonaut* and the credit here. In *Argonaut,* the denial of the lien meant that CIGA would not have to take money out of its own coffers to reimburse Argonaut Insurance Company for money the company paid in workers' compensation benefits to the injured employee. Here, the denial of the credit would not save CIGA a penny. It would simply mean that Baur would get

---

[4] Insurance Code section 1063.1, former subdivision (c)(4) is now subdivision (c)(5). (*Black Diamond Asphalt, Inc. v. Superior Court, supra,* 114 Cal.App.4th at p. 119, fn. 5.)

both the money from CIGA *and* additional workers' compensation benefits from the city.

This is a key point for two reasons. One, the Insurance Code provisions defining "covered claims" and excluding claims of subrogation protect CIGA's coffers by allowing CIGA to remain an insurer of last resort. (See *R. J. Reynolds Co. v. California Ins. Guarantee Assn., supra,* 235 Cal.App.3d at p. 600.) CIGA's coffers are unaffected by the grant or denial of credit here. Two, if the credit were denied and Baur were allowed to receive both the money from CIGA and additional workers' compensation benefits from the city, Baur would be in a better position than if Beck's insurance carrier, Vesta, had remained solvent. Had Vesta remained solvent, Labor Code section 3861 unquestionably would have applied and the city would have been entitled to a credit in the amount of Baur's net recovery of $30,909.44. There is no basis in law for a different result just because Beck's insurer was insolvent.[5]

---

[5] We distinguish language from a case cited by Baur that states using a "conduit" for CIGA's payment to an insurer does not "sanitize the transaction." (*E. L. White, Inc. v. City of Huntington Beach* (1982) 138 Cal.App.3d 366, 371 [187 Cal.Rptr. 879] (*E. L. White*).)

In *E. L. White*, the company (White) and the city were unsuccessful codefendants in actions for wrongful death and personal injury. (*E. L. White, supra,* 138 Cal.App.3d at p. 369.) White's insurer paid half the judgment and filed suit against the city for indemnity. (*Ibid.*) The city's insurer, however, became insolvent. (*Ibid.*) CIGA then sought a declaration that White's insurer could not proceed with its indemnity action. (*Ibid.*) The trial court agreed with CIGA. (*Id.* at pp. 369–370.) The appellate court affirmed, concluding that CIGA was "expressly forbidden from standing in the shoes" of the insolvent insurer because the claim was both by an insurer and a claim by right of subrogation, and therefore, White's insurer could not seek payment from CIGA. (*Id.* at pp. 370–371.)

The appellate court further held that White's insurer could not maintain a subrogation action against the city as the insured under a policy of an insolvent insurer: "If [the city] was required to indemnify [White's insurer] for the wrongful death judgment and CIGA assumed [the city's insurer's] insurance obligation to [the city], the result would be the same as if CIGA made direct payment to [White's insurer], an action expressly proscribed by [Insurance Code] section 1063.1. The fact that the payment would go from CIGA to a subrogated insurer through the conduit of an insured of an insolvent insurer does not sanitize the transaction. Such is merely an artifice aimed at circumventing the clear command of the Legislature." (*E. L. White, supra,* 138 Cal.App.3d at p. 371.)

*E. L. White* has no application here. As our court has noted, since *E. L. White* was decided, the Legislature has amended Insurance Code section 1063.1, subdivision (c)(5) so that now "a claim can be maintained against the insured for any sums in excess of the policy limits of his insurance policy regardless whether the claim is by, on behalf of, or will inure to the benefit of an insurer. Any suggestion to the contrary in *E. L. White* or its progeny has been superseded by statute." (*Black Diamond Asphalt, Inc. v. Superior Court, supra,* 114 Cal.App.4th at p. 119.) "This puts the insured in the same position as though his insurer had not become insolvent, but not in a better position." (*Ibid.*)

As we have noted in the body of the opinion, allowing a credit here leaves Baur in the same position as if Beck's insurer had not become insolvent, not in a better position.

If a credit is disallowed under Labor Code section 3861 when CIGA pays a claim on behalf of an insolvent insurance company for a third party tortfeasor, it is up to the Legislature, not the courts, to make this change.

## DISPOSITION

The order of the Workers' Compensation Appeals Board denying reconsideration is affirmed. The city shall be awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Scotland, P. J., and Raye, J., concurred.

**SCOTLAND, P. J.,** Concurring.—The result in this case does not seem fair. Police Officer Lance Baur filed a lawsuit against a suspect who injured him while Baur was acting in the line of duty. The suspect was insured by a company that had become insolvent. The California Insurance Guarantee Association (CIGA), standing in the shoes so to speak of the insolvent insurance company, agreed to settle the lawsuit. By statute, CIGA is not permitted to pay for any claims covered by workers' compensation insurance. Thus, the $50,000 settlement paid by CIGA necessarily was for general damages only. Nevertheless, a decision upheld by the Workers' Compensation Appeals Board, and now by this court, allows Baur's employer to tap into the settlement to cover future expenses for medical services that may be provided to Baur as workers' compensation benefits. In other words, the $50,000 received by Baur as general damages can be used by Baur's employer to pay for special damages resulting from the tortfeasor's conduct. This means, having agreed to the settlement to compensate him for his general damages, Baur could end up with no such compensation.

The result is compelled by Labor Code section 3861. The fact that the result may be unfair is a matter for the Legislature, not this court, to address. As I have often said, if there is a flaw in a statutory scheme, it is up to the Legislature, not the courts, to correct it. (*V.C. v. Superior Court* (2009) 173 Cal.App.4th 1455, 1472–1473 [93 Cal.Rptr.3d 851] (conc. opn. of Scotland, P. J.); *In re Brent F.* (2005) 130 Cal.App.4th 1124, 1130 [30 Cal.Rptr.3d 833]; *Knight v. Superior Court* (2005) 128 Cal.App.4th 14, 19 [26 Cal.Rptr.3d 687]; *People v. Hunt* (1999) 74 Cal.App.4th 939, 948 [88 Cal.Rptr.2d 524]; *Souza v. Lauppe* (1997) 59 Cal.App.4th 865, 874 [69 Cal.Rptr.2d 494]; *In re Marriage of Fisk* (1992) 2 Cal.App.4th 1698, 1702 [4 Cal.Rptr.2d 95]; *Squaw Valley Ski Corp. v. Superior Court* (1992) 2 Cal.App.4th 1499, 1515 [3 Cal.Rptr.2d 897]; *City of Victorville v. County of San Bernardino* (1991) 233 Cal.App.3d 1312, 1322

[233 Cal.Rptr. 1312, 285 Cal.Rptr. 206]; *Williams v. County of San Joaquin* (1990) 225 Cal.App.3d 1326, 1334 [275 Cal.Rptr. 302]; *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 334 [265 Cal.Rptr. 788].)