[No. C006010. Third Dist. June 26, 1990.]

COLLINS-PINE COMPANY et al., Cross-complainants and Appellants v.
TUBBS CORDAGE COMPANY et al., Cross-defendants and Respondents.

**COUNSEL**

Ramsey, Morrison, Keddy & Wallis, Ramsey, Morrison, Wallis & Abramson, Theodore H. Morrison and Marc Abramson for Cross-complainants and Appellants.

Donahue & Callaham and David E. Erickson for Cross-defendants and Respondents.

**OPINION**

**DAVIS, J.**—Cross-complainants Collins-Pine Company and Collins-Pine Building Center (collectively, Collins-Pine), appeal from the judgment in favor of cross-defendant Tubbs Cordage Company (Tubbs). The trial court granted Tubbs's summary judgment motion in Collins-Pine's cross-action for indemnity. It ruled that since Tubbs's insurer was insolvent, Insurance

Code section 1063.1, subdivision (c) barred the indemnity claim. We agree and shall affirm.

## BACKGROUND

The facts appear largely undisputed. On December 4, 1985, Ultrasystems, Inc., Ultrasystems Western Constructors, Inc., and Ronnie Dean Bryant (collectively, Ultrasystems), filed their complaint in the underlying action. On its insurers' behalf, Ultrasystems sued Tubbs and Collins-Pine. It alleged that Tubbs had made and sold to Collins-Pine some "polypro truck rope." Ultrasystems had purchased the rope and used it to tie down a machine on a pickup truck driven by one of its employees. The rope broke and the machine flew from the truck and struck an oncoming car. The impact killed one of the car's passengers, Brian Lindholdt, and injured the other, Howard Lewis.

Lewis and Lindholdt's heirs sued Ultrasystems in Orange County Superior Court. Ultrasystems settled the tort claims for approximately $2,850,000 plus some annuity contracts. It then filed this action for "equitable indemnity and/or contribution," breach of warranties, and strict liability.

Tubbs and Collins-Pine filed cross-complaints against each other for indemnity. Collins-Pine's cross-complaint also named as cross-defendants Thomson-Diggs Company and Garehime Corporation.[1]

On March 17, 1988, Tubbs moved for summary judgment on Ultrasystems' underlying complaint. Tubbs filed declarations to establish that its insurer, Integrity Insurance Company, had been placed in liquidation by a New Jersey court. Accordingly, under *E. L. White, Inc.* v. *City of Huntington Beach* (1982) 138 Cal.App.3d 366 [187 Cal.Rptr. 879], Tubbs argued that certain Insurance Code provisions discussed below barred Ultrasystems's action against it.

Although Tubbs had directed its summary judgment motion only to Ultrasystems's complaint, Collins-Pine filed its own opposition. Collins-Pine objected to Tubbs's proof of Ultrasystems's settlement of the original tort claims. It also objected to Tubbs's proof of Integrity Insurance Company's policies and insolvency.[2] Collins-Pine argued that summary judgment

---

[1] These entities apparently sold the rope as wholesalers. Neither entity is party to this appeal.

[2] Collins-Pine based all these objections on lack of authentication; the best evidence rule; and inadmissible hearsay. In response, Tubbs promised to produce the original insurance policies; declared its inability to obtain the original settlement agreements; and asked the court to take judicial notice of the New Jersey court's insolvency rulings.

was inappropriate on its cross-complaint because Tubbs sought judgment only on Ultrasystems's complaint. Finally, Collins-Pine sought to distinguish *E. L. White* as barring only subrogation claims, not indemnity claims.

The trial court followed *E. L. White* and granted the summary judgment motion as to Ultrasystems's complaint. The court then overruled Collins-Pine's evidentiary objections and granted Tubbs summary judgment on Collins-Pine's cross-complaint for indemnity. From its cross-complaint's ensuing dismissal, Collins-Pine timely appealed.[3]

## DISCUSSION

■ The sole issue presented on appeal is the propriety of the trial court's reliance on *E. L. White* to dismiss Collins-Pine's cross-complaint for indemnity.[4] Since no material facts appear disputed, the appeal presents strictly a legal issue.

The parties' dispute implicates the statutory scheme governing claims against insolvent insurers. In 1969, the Legislature created the California Insurance Guarantee Association (CIGA) "to protect policyholders of insolvent insurers and third parties claiming under policies issued by insurers that become insolvent. ([Ins. Code] § 1063 et seq.[5]); [other citations omitted].) Each time an insurer becomes insolvent, CIGA assesses its member insurers to the extent necessary to pay covered claims of the insolvent insurer as well as adjustment costs. (§ 1063.5.) CIGA's role is somewhat akin to that of the Federal Deposit Insurance Corporation in banking, and serves to enhance public confidence in the insurance industry. [Citation.]

"The essential duty of CIGA is to pay 'covered claims' of insolvent insurers. (§ 1063.2.) However, 'covered claims' are not coextensive with an insolvent insurer's obligations under its policies. [Citation.] Section 1063.1

---

[3] Ultrasystems has not separately appealed from the court's judgment dismissing its complaint against Tubbs.

The judgment did not mention Tubbs's cross-complaint against Collins-Pine. We directed counsel for both parties to brief why we should not dismiss the case for violation of the one final judgment rule. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 43, 56-57, pp. 66-67, 78-80.) In response, Tubbs dismissed its cross-complaint without prejudice.

[4] Collins-Pine has not claimed error in either the trial court's evidentiary rulings or in its decision to construe the summary judgment motion to reach its cross-complaint. Accordingly, we deem any error in those rulings waived and express no opinion on their propriety.

At oral argument Collins-Pine contended that Tubbs should not be put in a better position than had its insurer not become insolvent. Collins-Pine did not contend below or in its brief that either the terms or the amount of money provided for under the policies written by Tubbs's insolvent insurer did not cover the entire judgment. We express no opinion regarding whether we would reach the same result if such was not the case.

[5] Further undesignated statutory citations refer to the Insurance Code.

subdivision (c) defines 'covered claims' and also enumerates various claims which may arise but which are *not* covered." (*California Ins. Guarantee Assn.* v. *Liemsakul* (1987) 193 Cal.App.3d 433, 438-439 [238 Cal.Rptr. 346].)

Two provisions of section 1063.1, subdivision (c), focus our discussion. At the time of both the underlying tort and Tubbs's insurer's insolvency, section 1063.1, subdivision (c)(4), stated: " 'covered claims' shall not include *any obligations to insurers,* insurance pools, or underwriting associations, except as otherwise provided in this chapter." (Stats. 1983, ch. 308, § 1; Stats. 1984, ch. 564, § 1, italics added.)[6] Subdivision (c)(7) stated: " 'Covered claims' shall not include (a) any claim to the extent it is covered by any other insurance of a class covered by the provisions of this article available to the claimant or insured nor (b) *any claim by any person other than the original claimant under the insurance policy in his or her own name,* his or her executor, administrator, guardian or other personal representative or trustee in bankruptcy *and shall not include any claim asserted by an assignee or one claiming by right of subrogation,* except as otherwise provided in this chapter." (Stats. 1983, ch. 308, § 1; Stats. 1984, ch. 564, § 1, italics added.)[7]

In *E. L. White* v. *City of Huntington Beach, supra,* 138 Cal.App.3d 366, the court considered the impact of these two sections on one insurer's subrogated indemnification claim against its insured's joint tortfeasor and CIGA. In that case, White and Huntington Beach had been found liable in a wrongful death and personal injury action. (*Id.* at p. 369.) White's insurer, Royal Globe Insurance Co., paid half the judgment and sued Huntington Beach for indemnity. Huntington Beach's principal insurer, Reserve Insurance Co., then became insolvent. CIGA then sued Royal Globe for a declaration that Royal Globe could not proceed with its indemnity action. The trial court agreed with CIGA and Huntington Beach. (*Ibid.*)

On appeal, the court quickly rejected Royal Globe's attempt to seek indemnification from CIGA. Citing subdivisions (c)(4) and (c)(7)(b) of section 1063.1, the court simply stated: "Because Royal Globe is an insurer

---

[6] In 1987, the Legislature amended the subsection to exclude "any obligations to insurers, insurance pools, or underwriting associations [and] *their claims for contribution, indemnity, or subrogation, equitable or otherwise,* except as provided in this chapter." (Stats. 1987, ch. 833, § 1, italics added.) The amendments apply only to "claims resulting from insured occurrences that occur on or after January 1, 1988." (*Id.* at § 3.) In this case, the "insured occurrence" means the original accident involving the polypro rope. Since that occurred prior to 1985, the 1987 amendments do not apply.

[7] In 1987, the Legislature renumbered former subdivision (7) as current subdivision (9). (Stats. 1987, ch. 833, § 1.) The amendments otherwise left the subdivision unaltered. (See also Stats. 1989, ch. 1258, § 1.)

and because its claim is by right of subrogation, it may not seek payment from CIGA. Such is the clear and unambiguous language of the statute." (138 Cal.App.3d at pp. 370-371.)

The court then rejected Royal Globe's attempts to obtain judgment from CIGA's insured, Huntington Beach. The court stated: "If Huntington Beach was required to indemnify Royal Globe for the wrongful death judgment and CIGA assumed Reserve's insurance obligation to Huntington Beach, the result would be the same as if CIGA made direct payment to Royal Globe, an action expressly proscribed by section 1063.1. The fact that the payment would go from CIGA to a subrogated insurer through the conduit of an insured of an insolvent insurer does not sanitize the transaction. Such is merely an artifice aimed at circumventing the clear command of the Legislature.

"On the other hand, if CIGA did not pay Huntington Beach after it had been ordered to indemnify Royal Globe, Huntington Beach would be forced to satisfy the judgment from its own assets. *This is equally objectionable, because the overriding purpose of the Legislature in creating CIGA was to protect just such a party as Huntington Beach, the insured of an insolvent insurer.*" (138 Cal.App.3d at p. 371, italics added.)

The court agreed that in creating CIGA, " '[t]he Legislature chose to provide a limited form of protection for the public, not a fund for the protection of other insurance companies from the insolvencies of fellow members.' [Citations.]" (138 Cal.App.3d at p. 371.) As such, it rejected Royal Globe's attempt to force Huntington Beach to indemnify it from its own assets.

We agree with the reasoning in *E.L. White* and apply it to the case before us. *E. L. White* squarely bars Ultrasystems's insurers' claim against Tubbs.[8] Collins-Pine, however, argues that its posture is different and attempts to distinguish *E. L. White* in two ways.

First, Collins-Pine argues that Royal Globe, the party seeking indemnity in *E. L. White,* was an insurer subrogated to its insured's claim. Collins-Pine claims that it is neither an insurer nor a subrogee. We do not find the distinction meaningful.

To allow Collins-Pine to recover against Tubbs would permit indirectly what *E. L. White* barred directly. Collins-Pine seeks indemnity for any payments it must make to Ultrasystems's insurers. Allowing Collins-Pine's indemnity action would thus permit it to be an indirect conduit to the same

---

[8] Since Ultrasystems has not appealed, that issue is not actually before us.

insurers who are barred from receiving such indemnity directly. Such a result does not comport with the statutory scheme as outlined in *E. L. White,* and we decline to adopt it.

Second, Collins-Pine argues that *Phoenix Ins. Co.* v. *United States Fire Ins. Co.* (1987) 189 Cal.App.3d 1511 [235 Cal.Rptr. 185] permitted an insurer to seek indemnification from CIGA. We distinguish that case. There, CIGA succeeded to Signal Insurance Company's obligations. Signal had insured a law firm that had been sued for malpractice. CIGA claimed that Signal's insured had valid excess coverage under a Phoenix policy. (*Id.* at p. 1519.) CIGA claimed that this excess coverage was "other insurance" within the statutory claims exclusion found in former section 1063.1, subdivision (c)(7)(a). (*Ibid.*) Accordingly, it refused to participate with Phoenix and other insurers in settling a multimillion dollar legal malpractice case. (*Ibid.*)

Phoenix and the other carriers—excluding CIGA—eventually agreed to let a referee apportion their respective settlement contributions. After reserving its rights to relitigate that apportionment, Phoenix paid $950,000. (189 Cal.App.3d at p. 1520.) Phoenix then litigated CIGA's refusal to participate in the settlement efforts. (*Id.* at p. 1521.)

The trial court determined that CIGA's predecessor had been obligated to pay $360,000 towards the settlement. (189 Cal.App.3d at p. 1522.) The court ordered CIGA to reimburse Phoenix that amount. (*Ibid.*) CIGA appealed, arguing that it could not compensate another insurer by way of subrogation. (*Ibid.*)

On appeal, the court affirmed. It broadly stated: "we view Phoenix's right for relief as being based on the equitable principle of indemnification and thus, *independent* of any duty owed by CIGA to Signal's insureds." (189 Cal.App.3d at p. 1524, italics in original.) The court rejected CIGA's argument that the Insurance Code let CIGA "abandon an insured anytime an argument can be made that 'other insurance' is available." (*Id.* at p. 1524, fn. 12.) It concluded: "[i]n the final analysis, Phoenix's lawsuit was based neither on an 'obligation to an insurer' nor a 'right to subrogation.' It was based on a contention that CIGA wrongfully refused to perform its legal role and thereby wrongfully forced Phoenix to perform that role. Phoenix should not be punished for settling, in good faith, the malpractice claim instead of placing its own self interests before the interests of the injured

client by first litigating a lengthy declaratory relief action." (*Id.* at pp. 1524-1525.)[9]

We read *Phoenix* as allowing another insurer to obtain indemnity from CIGA only where CIGA has breached its statutory duty to defend, to cover a claim, or to settle a covered claim. 'We decline to read *Phoenix* broadly to authorize *any* indemnity claim. Where, as here, the indemnification claim arises only as a result of a *noncovered* subrogation claim, *Phoenix* simply does not apply.

Accordingly, we conclude that Collins-Pine could not have recovered indemnity from CIGA, since such an indemnification claim arises solely to compensate Ultrasystems's subrogated insurers indirectly for an indisputably noncovered claim. Since Collins-Pine cannot recover from CIGA, under *E. L. White,* it also may not recover from Tubbs.

## DISPOSITION

We affirm the judgment.

Carr, Acting P. J., and Sims, J., concurred.

Appellants' petition for review by the Supreme Court was denied September 12, 1990.

---

[9] The court elaborated: "It is clear that Phoenix, having established that [Signal's insureds] were not [Phoenix's] insureds during the period in question, was entitled to be indemnified for the loss it incurred as a result of CIGA's refusal to participate in the litigation. The purpose and objective of creating CIGA was to spread throughout the industry a loss suffered by an insured as the result of the insolvency of an insurer. It would be inconsistent with that purpose and objective to permit CIGA, arbitrarily, to impose such a loss on a single insurer by simply refusing to participate in reasonable good faith efforts to settle with an insured." (189 Cal.App.3d at pp. 1524-1525, fn. omitted; see also *Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 792 [244 Cal.Rptr. 655, 750 P.2d 297] [insured has claim for reimbursement from CIGA when CIGA improperly denies coverage, refuses to defend, or refuses to settle].)