[No. C006743. Third Dist. Feb. 6, 1991.]

CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Plaintiff and Appellant, v.
ARGONAUT INSURANCE COMPANY, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and II of the Discussion.

COUNSEL

Frederick G. Hall and Clausen & Campbell for Plaintiff and Appellant.

George E. Murphy, Debora K. Dragland, Andrea G. Stern and Bolling, Walter & Gawthrop for Defendant and Respondent.

OPINION

MARLER, Acting P. J.—California Insurance Guarantee Association (CIGA) appeals from the judgment of dismissal entered after the trial court sustained Argonaut Insurance Company's (Argonaut) demurrer without leave to amend. CIGA sought a declaration that it owed no duty to reimburse Argonaut for amounts Argonaut paid in workers' compensation benefits to an injured employee. CIGA became involved in the proceedings after a tortfeasor's insurer became insolvent. Although Insurance Code section 1063.1 provides that claims by an insurer and claims by right of subrogation are not "covered claims" which CIGA is required to pay, the trial court felt bound by the decision in *Burrow* v. *Pike* (1987) 190 Cal.App.3d 384 [235 Cal.Rptr. 408], which created an exception for workers' compensation benefits. We disagree with the *Burrow* decision and reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are not in dispute. Since this is the review of the sustaining of a demurrer, we take the facts from the allegations in the complaint. (*Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 922 [216 Cal.Rptr. 345, 702 P.2d 503].) In January of 1984 John McNabb, an employee of Hexadyne Energy Corporation, was injured when he was struck by a car driven by Edward Gaudet, an employee of Capitol Oil Corporation (Capitol). The accident occurred while both men were acting within the scope of their employment. Argonaut had issued a workers' compensation policy to Hexadyne and paid benefits to McNabb; Cal Farm had issued a liability policy to Capitol, but Cal Farm became insolvent before any claim regarding this accident was paid. McNabb brought suit against Gaudet and Capitol (the McNabb litigation) and Argonaut

intervened in the suit, claiming a lien of $69,999.27 for the workers' compensation benefits paid to McNabb. McNabb's suit was settled for $24,999.99 in May of 1988, but the settlement did not include the complaint-in-intervention. Argonaut continued to prosecute the McNabb litigation and filed a motion for summary adjudication of the issue that it was entitled to reimbursement from CIGA for the benefits it paid to McNabb.

On November 21, 1988, CIGA filed a complaint for declaratory relief, a temporary restraining order and a preliminary and permanent injunction, seeking a declaration that it had no duty to reimburse Argonaut and to restrain Argonaut from further prosecution of its complaint-in-intervention. Argonaut demurred, contending that CIGA's complaint failed to state a cause of action and that the issue had already been decided in the McNabb litigation. Argonaut requested the court to take judicial notice of its motion for summary adjudication in the McNabb litigation and the resulting order granting the motion and declaring that Argonaut is entitled to reimbursement from CIGA.[1] CIGA opposed the demurrer, arguing it was not a party to the McNabb litigation.

At the first hearing on the demurrer the court indicated its tentative ruling was to sustain the demurrer. However, realizing CIGA had not had the opportunity to brief the court on the applicability of the *Burrow* decision, the court allowed the parties to submit additional points and authorities on that issue. CIGA then argued that it was permitted to pay only covered claims, not the claims of an insurer. CIGA claimed the language in *Burrow* v. *Pike* that Argonaut relied on was dicta; if it was not dicta, then the decision did not survive scrutiny. Argonaut responded *Burrow* v. *Pike* was dispositive.

At the second hearing on April 28, 1989, the court agreed with Argonaut. The court stated it was bound by the *Burrow* decision and adopted its tentative ruling. The court clarified that it was not basing its decision on the existence of the McNabb litigation and resolution of the issue therein.

CIGA then appealed.[2]

---

[1] Argonaut has requested this court to take judicial notice of certain documents filed in the McNabb litigation. We grant such request pursuant to Evidence Code section 452, subdivision (d), permitting a court to take judicial notice of records of any court of this state.

[2] CIGA appealed on June 1, 1989, prior to the entry of judgment on June 5, 1989. This premature notice of appeal is still valid. Pursuant to rule 2(c) of the California Rules of Court, a notice of appeal filed after a judgment has been rendered but prior to the entry of judgment shall be valid and shall be deemed to have been filed immediately after the entry of judgment.

## DISCUSSION

Before turning to the merits of this case, we first address two procedural points raised by the parties as to whether the trial court acted properly in sustaining the demurrer without leave to amend and dismissing CIGA's action for declaratory relief.

## I, II*

. . . . . . . . . . . . . . . . . . . . . .

## III

CIGA contends it has no obligation to reimburse Argonaut because such claim for reimbursement is not a "covered claim" under Insurance Code section 1063.1.

CIGA was established to provide insolvency insurance for certain insurers. (Ins. Code, § 1063, subd. (a).) "Shortly after the creation of the association in 1969, the then Commissioner of Insurance wrote, 'The creation of the California Insurance Guarantee Association provides the insured public of the State of California with an additional protection by which those persons injured now have the assurance their claims will be paid, notwithstanding the fact that their claims may be against an insolvent company. Granted, the record in California of insolvencies is exemplary, but this record should not deter the State from protecting even a minute segment of the public from losses occasioned by insurance company insolvencies. The creation of the California Insurance Guarantee Association fulfills this purpose.'" (*California Union Ins. Co.* v. *Central National Ins. Co.* (1981) 117 Cal.App.3d 729, 734 [173 Cal.Rptr. 35], quoting Barger, *California Insurance Guarantee Association* (1970) 45 State Bar J. 475, 482.)

CIGA is required to pay all "covered claims" (Ins. Code, § 1063.2, subd. (a)), and is limited to payment of "covered claims." (*Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 787 [244 Cal.Rptr. 655, 750 P.2d 297]; *In re Imperial Ins. Co.* (1984) 157 Cal.App.3d 290, 293 [203 Cal.Rptr. 664].) "Covered claims" are the obligations of insolvent insurers (Ins. Code, § 1063.1, subd. (c)(1)), with certain exceptions. Among these exceptions are "obligations to insurers, insurance pools, or underwriting associations, [and] their claims for contribution, indemnity, or subrogation,

---

* See footnote, *ante*, page 624.

. . ." (Ins. Code, § 1063.1, subd. (c)(4)) and "any claim by any person other than the original claimant under the insurance policy in his or her own name, his or her executor, administrator, guardian or other personal representative or trustee in bankruptcy and shall not include any claim asserted by an assignee or one claiming by right of subrogation. . . ." (Ins. Code, § 1063.1, subd. (c)(9)(ii)).

CIGA asserts that under this statutory scheme it is precluded from reimbursing the insurer Argonaut for its claim for amounts spent in providing workers' compensation benefits to McNabb, a claim by an insurer by right of subrogation against Capitol and Gaudet, the insureds of the insolvent insurer Cal Farm. Therefore, for two independent reasons, it is not a "covered claim."

In *California Union Ins. Co.* v. *Central National Ins. Co., supra,* 117 Cal.App.3d 729, the court rejected an insurer's claim against CIGA for an insolvent insurer's contribution to a legal malpractice judgment. The court found such claim not to be a "covered claim." (*Id.* at p. 733.) The court found the exclusion of claims of insurers both rational and constitutional. "The Legislature chose to provide a limited form of protection for the public, not a fund for the protection of other insurance companies from the insolvencies of fellow members." (*Id.* at p. 734.) The court found the reasoning for the exclusion in comments by the drafters of the National Association of Insurance Commissioners Insurance Guarantee Association Model Bill, which stated coverage should not be extended to elements of the insurance industry which should know the financial condition of fellow insurers. (*Ibid.*)

The issue of CIGA's obligation to an insurer arose again in *E.L. White* v. *City of Huntington Beach* (1982) 138 Cal.App.3d 366 [187 Cal.Rptr. 879]. White and the city were unsuccessful codefendants in an action for wrongful death and a related personal injury action. White's insurer paid half of the judgment. The city's excess insurer became insolvent. CIGA filed a suit for declaratory and injunctive relief against White's insurer; the court enjoined White and his insurer from seeking indemnity from CIGA or the city. (*Id.* at p. 369.) The appellate court affirmed. It found CIGA was forbidden by statute from standing in the shoes of the insolvent excess insurer because the claim was both by an insurer (Ins. Code, § 1063.1, subd. (c)(4)) and a claim by right of subrogation (Ins. Code, § 1063.1, former subd. (c)(7)(b) [now subd. (c)(9)]). Accordingly, the insurer could not seek payment from CIGA. "Such is the clear and unambiguous language of the statute." (*E.L. White* v. *City of Huntington Beach, supra,* at p. 371.) The court also found the insurer could not recover from the city. If CIGA paid the city, which in turn paid the insurer, the artifice of using the city as a

conduit for CIGA's payment to the insurer would not sanitize the transaction. Requiring the city to pay the insurer on its own would defeat the purpose of creating CIGA to protect insureds when their insurer becomes insolvent. (*Ibid.*)

An exception to the statutory rule that CIGA will not reimburse a claim by right of subrogation was declared by the Fifth District in *Burrow* v. *Pike, supra,* 190 Cal.App.3d 384, when the claim relates to workers' compensation benefits. The facts in *Burrow* are similar to those of the instant case. The plaintiff was struck by a truck while working for the State of California, Department of Transportation (DOT). DOT filed and then dismissed a petition to intervene in plaintiff's lawsuit; DOT then filed a lien claim for its payment of workers' compensation benefits to plaintiff against any judgment entered for plaintiff. Defendant's insurer became insolvent and CIGA undertook the defense and filed a motion for a judgment on the pleadings as to DOT's lien. The trial court granted the motion. Plaintiff's judgment was reduced by an amount stipulated to be the lien amount. (*Id.* at pp. 388-389.)

DOT appealed, contending it was error to grant the motion for the judgment on the pleadings since it was not a party to the lawsuit. In the unpublished portion of the opinion, the appellate court agreed. (190 Cal.App.3d at p. 390.) The court also held that DOT had the right, as an aggrieved party, to appeal, and the judgment must be reversed. (*Id.* at p. 392.)

The court then proceeded to consider the merits of DOT's claim for reimbursement for workers' compensation benefits. The court prefaced its discussion, "our conclusion that the judgment on the verdict must be reversed makes it arguably unnecessary to consider at all the merits underlying the trial court's decision. However, we cannot ignore the fact that the principal contentions on appeal address the merits and the merits must be addressed in any further proceedings in the trial court . . . . Judicial economy requires this court to decide these issues inextricably involved in any further proceedings."[4] (190 Cal.App.3d at p. 393.)

Since this case turns on whether *Burrow* is a correct statement of the law, we set forth in detail the analysis of the *Burrow* court in reaching its

---

[4] CIGA argues that the discussion in *Burrow* permitting reimbursement from CIGA for amounts paid in workers' compensation benefits is dictum and has no force as precedent. Argonaut argues it was necessary to reach the issue for the public interest and to avoid further litigation. Since we are not bound by *Burrow* (*Israelsky* v. *Title Ins. Co. of Minnesota* (1989) 212 Cal.App.3d 611, 614 [261 Cal.Rptr. 72]), we consider the analysis in *Burrow* not for its precedential value, but to determine whether we are persuaded by its reasoning.

conclusion. The court first reviewed the purpose of CIGA as set forth in *E.L. White* v. *City of Huntington Beach, supra*, 138 Cal.App.3d 366, and the statutory exceptions of Insurance Code section 1063.1 to covered claims on which CIGA relied to defeat DOT's claim for reimbursement, pointing to three such exceptions: (1) DOT's failure to file a claim within six months (§ 1063.1, subd. (c)(1)(iii)), (2) that the claim was an obligation owed to the state (§ 1063.1, subd. (c)(3)), and (3) that the claim was one by right of subrogation (§ 1063.1, subd. (c)(7)(b) [now (c)(9)]). (*Burrow* v. *Pike, supra*, 190 Cal.App.3d at p. 395.)

The court found the failure timely to file a claim did not bar reimbursement because the lien could be filed at any time before the judgment was satisfied. (190 Cal.App.3d at p. 395.) The court found the argument that under Insurance Code section 1063.1 subrogation claims are not covered claims more difficult, stating the meaning evident on the face of the statute should not be followed for two reasons when one seeks reimbursement of workers' compensation benefits. The court characterized the first as a "procedural peculiarity" arising because the subrogation here differs from ordinary subrogation. (*Id.* at p. 397.) The court was concerned with the various ways in which the statutory exclusion could be asserted and with the possibility of double recovery by the plaintiff. CIGA in the role as defendant, having taken over for the insolvent insurer, owed the injured plaintiff the judgment less the amount of the workers' compensation lien. If DOT tried to enforce the lien against the defendants, CIGA would raise the statutory exception as a defense. (*Id.* at p. 396.) If DOT waited until the entire judgment was paid to plaintiff, either CIGA would have to assert the statute as a stranger to the action or plaintiff would assert it, attempting to secure a double recovery. (*Id.* at p. 397.)

CIGA argues this concern is unfounded; the specter of double recovery for plaintiff would not materialize. Under Insurance Code section 1063.1, subdivision (c)(9)(i), covered claims do not include claims covered by other insurance. Thus, in settling or adjudicating the claim of the injured employee, CIGA would not pay amounts already covered by workers' compensation. Therefore, plaintiff would not receive a double recovery. The result would be that the workers' compensation carrier would pay all damages covered under the workers' compensation policy and CIGA would pay any additional amounts owing to the injured employee. The injured employee would be made whole; the solvent workers' compensation insurer would not be reimbursed for its payment. CIGA contends this is what the Legislature intended in excluding claims by insurers and claims by right of subrogation from the definition of covered claims.

We find CIGA's refutation of the Fifth District's concern persuasive. The perceived "procedural peculiarity" is insufficient to override the clear statutory language.

The *Burrow* court found a more compelling reason not to follow the interpretation of Insurance Code section 1063.1 advanced by CIGA. This reason was the fundamental policy difference between workers' compensation insurance and other types of insurance. The court found reimbursement for workers' compensation benefits differed from the traditional action for subrogation. To explain this difference the court first examined the policies underlying workers' compensation insurance. It noted that the purpose of such insurance was not only to eliminate tort actions against employers, but also to assure a fund from which injured employees could be paid expeditiously. (190 Cal.App.3d at p. 398.) Citing a law review article, the court pointed out that subrogation played an important part in assuring that fund existed.[5] Recovery under subrogation affects the overall financial structure of the workers' compensation system. Subrogation recovery benefits the employers by lowering their premium rates; it benefits employees by permitting them to recover higher benefits; and it benefits the public at large by encouraging industrial safety by potential tortfeasors. (*Id.* at p. 399.)

Based on this important policy behind workers' compensation, the *Burrow* court found "a clear legislative policy militating in favor of reimbursement whenever possible."[6] (190 Cal.App.3d at p. 399.) The court viewed the employer, DOT, as part of the injured public CIGA was created to protect.

---

[5] The court cites to Lasky, *Subrogation Under the California Workmen's Compensation Laws-Rules, Remedies and Side Effects* (1972) 12 Santa Clara Law. 1. In this article Lasky argues that in considering changes to the rules of subrogation for workers' compensation benefits, one must look at the big picture. Any change will affect not only the parties to subrogation actions, but all employers, all employees, and the public because subrogation recoveries are as much a part of the total revenues supporting the workers' compensation system as premiums. (*Id.* at pp. 4-6.)

[6] Argonaut contends this policy favoring reimbursement is indicated in Labor Code section 3852 which permits an employer to bring suit against a third party to recover compensation benefits. The term "employer" in section 3852 includes the employer's insurance carrier. (*Fidelity & Cas. Co.* v. *McMurry* (1963) 217 Cal.App.2d 767, 769 [32 Cal.Rptr. 243].) Argonaut contends the *Burrow* court properly resolved the conflict between Labor Code section 3852 favoring reimbursement and Insurance Code section 1063.1, subdivision (c) denying reimbursement for certain claims by finding the policy behind the workers' compensation system more important. We do not find a conflict between these two statutes. Under Labor Code section 3852 an employer or its carrier may bring an action against a third party to recover compensation benefits. An action against the third party's insurer is available only to the extent the insurer provides coverage for the act or omission in question. Since in this case CIGA does not provide coverage for Argonaut's claim because it is not a "covered claim," nothing in Labor Code section 3852 gives Argonaut the right to recover from CIGA.

(*Ibid.*) The court indicated that if the Legislature wanted to exclude reimbursement for workers' compensation benefits from covered claims to be paid by CIGA, it could incorporate such a provision in Insurance Code section 1063.1. It concluded that until the Legislature did so, "we believe the policy which justifies reimbursement of workers' compensation benefits for the good of employer and employee alike outweighs the policy underlying the statutory exclusions on which defendants rely, i.e., that neither solvent insurance companies nor state agencies should be allowed to recoup their losses, occasioned when a member insurer becomes insolvent, from those funds earmarked to pay claims of injured individuals otherwise unable to recover from the insolvent member."[7] (*Id.* at pp. 399-400.)

We disagree with the reasoning employed by the Fifth District in this case and decline to follow it. The issue presented in this case is whether Argonaut's claim for reimbursement is a "covered claim." Resolution of this issue lies in the provisions of Insurance Code section 1063.1 defining "covered claims." The rules of statutory interpretation are well-settled. ■ "In interpreting the meaning of a statute we begin, as we must, with the language used." (*Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 91 [255 Cal.Rptr. 670, 767 P.2d 1148].) When the statutory language is clear and unambiguous, its plain meaning must prevail. (*Valladares* v. *Stone* (1990) 218 Cal.App.3d 362, 368-369 [267 Cal.Rptr. 57].) In such cases there is no need for construction of the statute, and courts should not indulge in it. (*In re Lance W.* (1985) 37 Cal.3d 873, 886 [210 Cal.Rptr. 631, 694 P.2d 744].) ■ We find the language of Insurance Code section 1063.1, subdivision (c)(4) excluding claims of insurers and that of subdivision (a)(9) excluding claims by right of subrogation to be clear and unambiguous. We need not construe the statute; its meaning is clear—a claim by an insurer or a claim by right of subrogation is not a "covered claim."

The *Burrow* court goes beyond construing or interpreting the statute; it rewrites Insurance Code section 1063.1 based on its perception that the statute as written overlooks an important policy consideration. Crafting

---

[7] In *Burrow* the party seeking reimbursement for the workers' compensation benefits was the employer, DOT, not an insurer. The court appears to have believed that the importance of the policy favoring reimbursement should apply to either the state or an insurer (*id.* at pp. 399-400), although just before this conclusion the court suggests reimbursement is permissible because it will benefit the insured public, not insurance companies. "This is not a case of one insurance company recouping its losses at the expense of fellow members of the industry." (*Id.* at p. 399.) We do not believe the analysis in *Burrow*, nor our reaction to it, would differ depending on whether the party seeking reimbursement was an insurer or the state. Claims from either are excluded from the definition of "covered claims." (Ins. Code, § 1063.1, subds. (c)(3) and (c)(4).) Further, we do not find a difference in whether the method for recovery is by intervention or by a lien.

statutes to conform with policy considerations is a job for the Legislature, not the courts; our role is to interpret statutes, not to write them. (*Metromedia* v. *City of San Diego* (1982) 32 Cal.3d 180, 187 [185 Cal.Rptr. 260, 649 P.2d 902] and cases cited therein.)

The *Burrow* court suggests that if the Legislature intends reimbursement for workers' compensation to be excluded from the definition of covered claims, it can say so. By excluding claims from insurers and claims by right of subrogation the Legislature has done just that. "Such is the clear and unambiguous language of the statute." (*E.L. White* v. *City of Huntington Beach, supra,* 138 Cal.App.3d at p. 371.) ■ ■■■■ In our view, if the Legislature views workers' compensation as significantly different from other insurance so as to necessitate different treatment in recovering claims from CIGA, the Legislature can say so.[8] Insurance Code section 1063.1 shows that the Legislature knew how to make an exception for workers' compensation benefits when it so intended. For example, in determining the monetary limits of covered claims there are exceptions for workers' compensation benefits. Insurance Code section 1063.1, subdivision (c)(5) provides: " 'Covered claims,' except in the case of a claim for workers' compensation benefits, shall not include any claim in the amount of one hundred dollars ($100) or less, . . ." Subdivision (c)(6) of Insurance Code section 1063.1 provides: " 'Covered claims' shall not include that portion of any claim, other than a claim for workers' compensation benefits, which is in excess of five hundred thousand dollars ($500,000)."

Belatedly, at oral argument, Argonaut put forth an additional reason why we should follow *Burrow* v. *Pike*. The Fifth District decided *Burrow* in 1987; in 1989 the Legislature amended Insurance Code section 1063.1. (Stats. 1989, ch. 1258, § 1, No. 6 Deering's Adv. Legis. Service, pp. 4932-

[8] We are not persuaded that the policy of protecting the integrity of the workers' compensation system by permitting subrogation recovery from CIGA clearly outweighs the policy of restricting payments by CIGA, evidenced in Insurance Code section 1063.1. The overriding importance of the former was the basic premise of the court in *Burrow*. CIGA has requested this court to take judicial notice of a recent opinion of the Workers' Compensation Appeals Board pursuant to Evidence Code sections 451, subdivision (a), and 452, subdivision (c), and we grant this request. In this decision, entitled *Victor Llanos* v. *Manpower, Inc.*; *Citation Insurance Company*; *California Insurance Guarantee Association*, case No. SJ 106526, the board faced the same issue as in this case and rejected the reasoning of *Burrow*. The board found the obligation of an insolvent insurer to reimburse another insurer for workers' compensation benefits paid was not a "covered claim." This decision suggests the board does not believe the need for protecting the workers' compensation system by requiring subrogation reimbursement from CIGA outweighs the policy evidenced by Insurance Code section 1063.1. Since the board is charged with enforcing and interpreting the workers' compensation system, we think its interpretation of the policy to be entitled to some weight, just as its interpretation of a statute it is charged with enforcing is entitled to great weight. (*Wilkinson* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491, 501 [138 Cal.Rptr. 696, 564 P.2d 848].)

4933.) The amendment altered the provisions of only subdivisions (c)(2)(vii) and (c)(7). Argonaut argues the Legislature acquiesced in the judicial construction of *Burrow* since it did not amend the statute specifically to exclude claims for reimbursement of workers' compensation benefits from "covered claims" as *Burrow* suggested the Legislature could do. (*Burrow* v. *Pike, supra,* 190 Cal.App.3d at p. 399.)

■ We are aware of the well-established rule of statutory construction that when the Legislature amends a statute without altering a provision that has previously been judicially construed, the Legislature is presumed to have been aware of such judicial construction and to have acquiesced in it. (*Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345, 353 [211 Cal.Rptr. 742, 696 P.2d 134]; *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161]; *People* v. *Hallner* (1954) 43 Cal.2d 715, 719 [277 P.2d 393].)

However, such presumed acquiescence is not stated as strongly in other, later cases. In responding to such an argument of legislative consent, the Supreme Court said " 'Legislative silence after a court has construed a statute gives rise at most to an arguable inference of acquiescence or passive approval, the weaknesses of which have been exposed elsewhere. But something more than mere silence should be required before that acquiescence is elevated into a species of implied legislation . . . .' [Citations omitted.]" (*Cianci* v. *Superior Court* (1985) 40 Cal.3d 903, 923 [221 Cal.Rptr. 575, 710 P.2d 375]; accord *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 300-301 [250 Cal.Rptr. 116, 758 P.2d 58].) Most recently, the Supreme Court has described the presumption recognized in the *Wilkoff, Marina Point* and *Hallner* cases as only a somewhat persuasive device. In *Hydrotech Systems, Ltd.* v. *Oasis Waterpark* (1991) 52 Cal.3d 988, 1001 [277 Cal.Rptr. 517, 803 P.2d 370], the court stated, "The Legislature's inaction is some indication that it accepted existing judicial limitations . . . ."

We do not find this rule applicable here. As discussed above, we cannot consider the *Burrow* decision to be a judicial construction of Insurance Code section 1063.1. Since the language of the statute was clear and indicated the legislative intent, there was no need for interpretation or construction. (*Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 353-354 [139 P.2d 908].)

Instead, the *Burrow* court rewrote the statute to accord greater weight to a policy consideration it thought the Legislature overlooked. We do not find

the legislative inaction helpful in the interpretation of the statute in question.

 As currently written, Insurance Code section 1063.1 does not permit CIGA to reimburse Argonaut for amounts Argonaut paid to McNabb in workers' compensation benefits. Subdivision (c)(4) of section 1063.1 excludes obligations to insurers from the category of "covered claims." Subdivision (c)(9)(ii) of section 1063.1 excludes claims made by right of subrogation. Although denying subrogation to a workers' compensation carrier may result in an increased financial burden on the workers' compensation system, this result does not justify ignoring the clear language of the statute. Denying subrogation recovery from CIGA may result in some increased insurance costs, some of which would be borne by the insured public. Permitting subrogation recovery from CIGA would result in some increased insurance costs to the involuntary members of CIGA, which costs may also be passed on in part to the insured public. The Legislature has balanced these competing concerns for protecting the insured public in the creation and statutory duties of CIGA. We shall not take it upon ourselves to change the balance.

### DISPOSITION

The judgment is reversed and the matter remanded for further proceedings consistent with this opinion. CIGA shall recover its costs on appeal.

Scotland, J., and Nicholson, J., concurred.