[No. G031221. Fourth Dist., Div. Three. Jan. 23, 2004.]

JOHN MICHAEL ROTH, Plaintiff, v.
L.A. DOOR COMPANY, Defendant and Respondent;
NUTRILITE PRODUCTS, Intervener and Appellant.

COUNSEL

Law Offices of Robert E. Lundgren, Jr., and Robert E. Lundgren, Jr., for Intervener and Appellant.

Black, Compean & Hall, Frederick G. Hall, Daniel Eli and Lisa J. Martin for Defendant and Respondent.

OPINION

MOORE, J.—The employer of an employee injured on the job, after paying workers' compensation benefits out of its self-insured retention, sought reimbursement from the California Insurance Guarantee Association (CIGA). The trial court denied the requested relief because the employer's claim was not a "covered claim" under Insurance Code section 1063.1, subdivision (c). The employer contends the court erred in interpreting subdivision (c), because it is not an "insurer" within the meaning of that provision. It also contends that it has a right to proceed directly against the manufacturer of the overhead door that injured the employee.

We disagree on both counts. First, the employer, as a self-insurer for purposes of providing workers' compensation benefits, is deemed to be an "insurer" providing "other insurance" within the meaning of Insurance Code section 1063.1, subdivision (c)(9). Therefore, its claim is excluded as a "covered claim" and CIGA is not responsible for the amounts paid to the injured employee from the employer's self-insured retention. Furthermore, to permit the employer to recover the sums directly from the manufacturer of the door, whose insurer was insolvent, would be to permit the employer, as an "insurer" for the purposes of workers' compensation insurance, to obtain indirectly what it could not obtain directly from CIGA. We affirm.

I

FACTS

John Michael Roth (Roth), a Nutrilite Products (Nutrilite) employee, was injured on November 1, 1999, during the course and scope of his employment. While Roth was on Nutrilite premises, a metal overhead trailer door fell to a "closed" position, striking him in the back of the head. Roth suffered injuries to his head, neck and left hand.

Nutrilite paid workers' compensation benefits to Roth through RSKCo., Nutrilite's independent third party workers' compensation benefits administrator. Nutrilite had workers' compensation insurance through Insurance Company of Pennsylvania. However, Nutrilite was responsible for the first $250,000 per incident, as its self-insured retention.[1]

In October 2000, Roth filed a complaint against L.A. Door Company (L.A. Door), alleging that it had designed and manufactured the door. He asserted causes of action for negligence, strict products liability and breach of warranty.

In November 2000, Nutrilite "c/o RSKCo." filed a complaint in intervention. It sought reimbursement for the workers' compensation benefits it had paid to Roth on account of his injuries. Nutrilite ultimately paid at least $78,985.99 in workers' compensation benefits to Roth.

L.A. Door had insurance coverage through United Pacific Insurance Company. Roth's claim was covered by that insurance. United Pacific Insurance Company was a subsidiary of Reliance Insurance Company. Reliance Insurance Company was declared insolvent on October 3, 2001.

Roth settled his claim against L.A. Door before trial and dismissed his complaint. On the date scheduled for trial on the complaint in intervention, L.A. Door stipulated to liability. The matter went to trial on the issue of whether a workers' compensation subrogation claim is considered a "covered claim" under the laws applicable to CIGA, and if not, whether Nutrilite could proceed directly against L.A. Door.

The court ruled against Nutrilite, for two reasons. First, it held the complaint in intervention was barred by Insurance Code section 1063.1, subdivision (c)(5) because Nutrilite, "as a permissively self-insured employer, [was] an 'insurer' pursuant to Labor Code section 3211 and because its claim as set forth in the complaint in intervention [was] a subrogation claim." Second, Insurance Code section 1063.1, subdivision (c)(9) barred the complaint in intervention because Nutrilite was "not the 'original claimant' as its

---

[1] The record reflects that Nutrilite has been somewhat inconsistent in its characterization of the $250,000 responsibility. The parties' joint list of stipulated facts describes the amount as a "deductible." However, Nutrilite stated in its complaint in intervention that it was "authorized as a self-insured entity for purposes of providing general workers' compensation insurance benefits to its employees." The declaration of Nutrilite's attorney, in support of the complaint in intervention, contains a statement to the same effect. On appeal, Nutrilite again characterizes its policy as containing "a $250,000 retention per incident." The judgment implies a finding that Nutrilite was "a permissively self-insured employer," and there is substantial evidence to support that finding. (See *In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 928 [76 Cal.Rptr.2d 866].)

claim for reimbursement of workers' compensation benefits [was] derivative and also because [Nutrilite's] claim [was] a claim by way of subrogation."

Nutrilite filed an appeal from the judgment.

II

DISCUSSION

A. *CIGA: "Covered Claims"*

CIGA was formed to provide insurer insolvency insurance for its members. (Ins. Code, § 1063.) Pursuant to Insurance Code section 1063.2, CIGA pays and discharges "covered claims." The term "covered claims" is defined in Insurance Code section 1063.1, subdivision (c). Subdivision (c)(1) defines "covered claims" as "the obligations of an insolvent insurer . . . ."

However, Insurance Code section 1063.1, subdivision (c) contains a number of exclusions from this definition. Subdivision (c)(5) provides in pertinent part: " 'Covered claims' does not include any obligations to insurers, insurance pools, or underwriting associations, nor their claims for contribution, indemnity, or subrogation, equitable or otherwise . . . ."

Insurance Code section 1063.1, subdivision (c)(9) provides: " 'Covered claims' does not include (i) any claim to the extent it is covered by any other insurance of a class covered by this article available to the claimant or insured nor (ii) any claim by any person other than the original claimant under the insurance policy in his or her own name . . . and does not include any claim asserted by an assignee or one claiming by right of subrogation . . . ."[2]

At issue is whether the trial court correctly interpreted these provisions in determining, in essence, that Nutrilite's claim against CIGA was not a "covered claim."

B. *Workers' Compensation Subrogation Under CIGA Provisions*

(1) *Nutrilite's contention*

Nutrilite claims that the trial court, in interpreting Insurance Code section 1063.1, subdivision (c), incorrectly applied *California Ins. Guarantee Assn. v.*

---

[2] Insurance Code section 1063.1, subdivision (g) defines a "claimant" as "any insured making a first party claim or any person instituting a liability claim . . . ."

*Argonaut Ins. Co.* (1991) 227 Cal.App.3d 624 [278 Cal.Rptr. 23], rather than *Burrow v. Pike* (1987) 190 Cal.App.3d 384 [235 Cal.Rptr. 408]. Nutrilite claims there is a split of authority between the appellate courts in the Fifth District (*Burrow*) and the Third District (*Argonaut*), and that the trial court should have followed the former as the better reasoned. We disagree.

### (2) *Burrow v. Pike*

We first address *Burrow v. Pike, supra,* 190 Cal.App.3d 384, on which Nutrilite relies. In that case, the plaintiff, an employee of the Department of Transportation, was injured when struck by a truck. The plaintiff filed suit against the owner and the operator of the truck. The Department of Transportation, seeking to recoup the money it had paid to the plaintiff in workers' compensation benefits, filed a notice of lien claim against any judgment entered in favor of the plaintiff. During the pendency of the action, the defendants' insurer became insolvent.

The defendants then filed a motion for judgment on the pleadings as to the claim of lien, and the trial court granted the motion. Thereafter, the jury returned a verdict in the amount of $75,000 in favor of the plaintiff. However, because the plaintiff and the defendants had stipulated that the workers' compensation credit was $50,000, the trial court reduced the amount of the award to $25,000. The Department of Transportation filed an appeal, claiming the trial court lacked jurisdiction to determine the validity of the lien claim or to affect its right to seek reimbursement for workers' compensation expenses it had paid. The appellate court agreed with the Department of Transportation, and reversed the judgment.

At the outset, we observe, first, that *Burrow v. Pike, supra,* 190 Cal.App.3d 384 revolves around certain procedural peculiarities, most notably the judgment on the pleadings with respect to the claim of lien and, second, that the discussion of the workers' compensation subrogation issue is in dictum. The appellate court held there was no legal basis for the granting of the motion for judgment on the pleadings against the Department of Transportation, which was not a party to the action, and there was no basis for reducing the verdict. (*Id.* at p. 390.) For this reason, the appellate court not only reversed the judgment on the verdict, but also permitted (a) the withdrawal of the stipulation that was based on the order granting the motion for judgment on the pleadings and (b) a limited new trial on the issue of the Department of Transportation's concurrent negligence. (*Id.* at p. 393.)

The appellate court then noted that it was "arguably unnecessary" to address the merits underlying the decision of the trial court. (*Burrow v. Pike, supra,* 190 Cal.App.3d at p. 393.) For the purposes of judicial economy, it did

so anyway. The defendants asserted that the claim of lien was barred by, inter alia, the Insurance Code section 1063.1, subdivision (c) exclusion from covered claims of claims presented by any person other than the original claimant or claims asserted by right of subrogation. The appellate court reviewed the Insurance Code section 1063.1, subdivision (c) definition of "covered claims," and certain exclusions therefrom, including the exclusion for " 'one claiming by right of subrogation.' " (*Burrow v. Pike, supra,* 190 Cal.App.3d at p. 395, italics omitted.) It also considered the underlying purpose of CIGA. The court concluded that, for policy reasons, the section 1063.1, subdivision (c) exclusions from covered claims should not operate to bar recovery in the case before it.

It stated: "[W]e believe the policy which justifies reimbursement of workers' [c]ompensation benefits for the good of employer and employee alike outweighs the policy underlying the statutory exclusions on which defendants rely, i.e., that neither solvent insurance companies nor state agencies should be allowed to recoup their losses, occasioned when a member insurer becomes insolvent, from those funds earmarked to pay claims of injured individuals otherwise unable to recover from the insolvent member. [¶] Therefore, we conclude that defendants' objection to appellant's lien based on Insurance Code section 1063 is without merit." (*Burrow v. Pike, supra,* 190 Cal.App.3d at pp. 399–400.)

This is the reasoning Nutrilite would like us to apply. It would like us to conclude, as did the court in *Burrow v. Pike, supra,* 190 Cal.App.3d 384, that the right to recoup monies paid as workers' compensation benefits trumps the statutory exclusions from "covered claims" as contained in Insurance Code section 1063.1, subdivision (c). We decline to adopt this conclusion, however, inasmuch as we find the reasoning of *California Ins. Guarantee Assn. v. Argonaut Ins. Co., supra,* 227 Cal.App.3d 624 to be more persuasive.

(3) *California Ins. Guarantee Assn. v. Argonaut Ins. Co.*

The Third District in *California Ins. Guarantee Assn. v. Argonaut Ins. Co., supra,* 227 Cal.App.3d at page 633 declined to follow the decision in *Burrow v. Pike, supra,* 190 Cal.App.3d 384. In *Argonaut,* an employee of Hexadyne Energy Corporation was injured when hit by a car driven by an employee of Capitol Oil Corporation. Argonaut Insurance Company, Hexadyne's workers' compensation insurer, paid benefits to the injured employee. Cal Farm, the insurer for Capitol, was insolvent. The injured employee sued the driver of the car and Capitol. Argonaut intervened to recover the amount of workers' compensation benefits it had paid to the injured employee, seeking reimbursement from CIGA.

CIGA filed a complaint for declaratory relief, requesting a declaration that it was not required to reimburse Argonaut. The trial court denied the requested relief, based on *Burrow v. Pike, supra,* 190 Cal.App.3d 384. The appellate court reversed, rejecting the *Burrow* decision. In a lengthy discussion of the case, it characterized the *Burrow* decision as "rewrit[ing] Insurance Code section 1063.1 . . . ." (*California Ins. Guarantee Assn. v. Argonaut Ins. Co., supra,* 227 Cal.App.3d at p. 633.)

The *Argonaut* court saw the statutory scheme as clear and unambiguous. It stated: " 'Covered claims' are the obligations of insolvent insurers (Ins. Code, § 1063.1, subd. (c)(1)), with certain exceptions. Among these exceptions are 'obligations to insurers, insurance pools, or underwriting associations, [and] their claims for contribution, indemnity, or subrogation, . . .' (Ins. Code, § 1063.1, subd. (c)(4)[3]) and 'any claim by any person other than the original claimant under the insurance policy in his or her own name . . . and shall not include any claim asserted by an assignee or one claiming by right of subrogation. . . .' (Ins. Code, § 1063.1, subd. (c)(9)(ii))." (*California Ins. Guarantee Assn. v. Argonaut Ins. Co., supra,* 227 Cal.App.3d at pp. 628–629, fn. added.)

The court held that Insurance Code section 1063.1 did not permit CIGA to provide reimbursement to Argonaut because the statute excluded obligations to insurers and claims made by right of subrogation as "covered claims." It emphasized that CIGA was intended to provide additional protection for injured persons, and was not meant to be " 'a fund for the protection of other insurance companies from the insolvencies of fellow members.' [Citation.]" (*California Ins. Guarantee Assn. v. Argonaut Ins. Co., supra,* 227 Cal.App.3d at p. 629.)

As we view it, *California Ins. Guarantee Assn. v. Argonaut Ins. Co., supra,* 227 Cal.App.3d 624 is the better reasoned case. It addresses CIGA's statutory liabilities in a simple and straightforward manner. The Insurance Code section 1063.1, subdivision (c) exclusions are clear and unambiguous and mandate that there is no coverage in this case.

Nutrilite disagrees with our analysis and maintains that the reasoning of the Fifth District in *Burrow v. Pike, supra,* 190 Cal.App.3d 384 should apply. However, as L.A. Door points out, *Burrow v. Pike, supra,* 190 Cal.App.3d 384 is not the most recent Fifth District case. The Fifth District has spoken again, in *Denny's Inc. v. Workers' Comp. Appeals Bd.* (2003) 104 Cal.App.4th 1433 [129 Cal.Rptr.2d 53]. We turn our attention to that case.

---

[3] See now Insurance Code section 1063.1, subdivision (c)(5).

(4) *Denny's Inc. v. Workers' Comp. Appeals Bd.*

In *Denny's Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.4th 1433, an employee suffered a cumulative injury over the period of a year. During the first two months of that period, the employer was self-insured for workers' compensation purposes. During the remaining 10 months, the employer had workers' compensation insurance through HIH America. HIH America was subsequently declared insolvent. The employer asserted that CIGA was required to guarantee HIH America's proportionate share of the workers' compensation obligation. The Workers' Compensation Appeals Board disagreed and dismissed CIGA as a party to the workers' compensation claim.

On a writ of review, the appellate court affirmed. In reaching its decision, the court analyzed the various statutory provisions applicable to the workers' compensation and CIGA issues. First, it stated that "[e]very California employer must secure the payment of workers' compensation benefits by either purchasing third party insurance or obtaining a 'certificate of consent to self-insure' from the Director of Industrial Relations. [Citations.]" (*Denny's Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.4th at p. 1439.) It further stated: "Within the workers' compensation laws, the term 'insurer' specifically denotes permissibly self-insured employers. Labor Code, section 3211, provides: ' "Insurer" includes the State Compensation Insurance Fund and any private company, corporation, mutual association, reciprocal or interinsurance exchange authorized under the laws of this State to insure employers against liability for compensation *and any employer to whom a certificate of consent to self-insure has been issued.*' (Italics added.)" (*Id.* at p. 1440.)

In concluding that CIGA was properly dismissed from the proceeding, the *Denny's* court stated: "[W]hile the Guarantee Act does not expressly mention employer-provided self-insurance, it references workers' compensation insurance, which statutorily includes employers with permission to self-insure. Accordingly, an employer self-insured for workers' compensation purposes provides 'other insurance of a class covered by' the Guarantee Act within the meaning of section 1063.1, subdivision (c)(9)." (*Denny's Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.4th at p. 1441.) In other words, the claim of the self-insured employer, as a provider of "other insurance" within the meaning of subdivision (c)(9), is not a "covered claim" payable by CIGA.

Despite the explicit language of *Denny's Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.4th 1433, Nutrilite contends the case is inapplicable. As Nutrilite sees it, the case only had to do with the allocation of liability as between multiple responsible parties under Labor Code section 5500.5. As the

court in *Denny's Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.4th at page 1437 explained: "When an employee suffers a cumulative injury over time, the employee may claim workers' compensation benefits against any one or more of successive employers or insurance carriers that employed or insured the employee during a maximum one-year injury period. (Lab. Code, § 5500.5; [citation].)"

While it is true that the allocation of liability as between multiple parties was at issue in the case, it certainly was not the only issue the court decided. The court specifically stated that "Denny's believes a self-insured employer does not provide 'insurance' and is not an 'insurer' . . . ." (*Denny's Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.4th at p. 1440.) The court squarely rejected this contention (*ibid.*)—the same one that Nutrilite is making now.

### (5) *Black Diamond Asphalt, Inc. v. Superior Court*

After oral argument in this case, the Third District again addressed Insurance Code section 1063.1, in *Black Diamond Asphalt, Inc. v. Superior Court* (2003) 114 Cal.App.4th 109 [7 Cal.Rptr.3d 466]. We gave the parties an opportunity to submit further briefing on *Black Diamond Asphalt, Inc. v. Superior Court, supra,* 114 Cal.App.4th 109.

In *Black Diamond Asphalt, Inc. v. Superior Court, supra,* 114 Cal.App.4th 109, a trucker leased two trailers from a trucking company, Black Diamond Asphalt, Inc. (Black Diamond), and also contracted to transport freight for Black Diamond. The trucker was required to have Black Diamond named as an additional insured on his liability insurance policy. He was involved in an accident that resulted in the death of one individual and the injury of another. In the ensuing personal injury and wrongful death action, Black Diamond was sued on a respondeat superior theory. Black Diamond was self-insured for the first $1 million in damages and the costs of defense. It filed a cross-complaint for indemnity against the trucker. CIGA, stepping in because the trucker's insurer was insolvent, asserted that an indemnity cause of action could not be maintained against the insured of an insolvent insurer. The trial court agreed, but the appellate court did not.

The appellate court reiterated: "CIGA was created to protect members of the public against the insolvency of an insurance company. It was not created to protect insurance companies against the insolvency of fellow members. [Citation.] Accordingly, the laws relating to CIGA were crafted so that, in the event of an insurer's insolvency, CIGA would assume the obligations of the insurer up to a statutory maximum, but not where payment would inure to the benefit of a solvent insurer who had insured the risk. (See *California Ins.*

*Guarantee Assn. v. Argonaut Ins. Co.* (1991) 227 Cal.App.3d 624, 629–630 [278 Cal.Rptr. 23]; *Collins-Pine Co. v. Tubbs Cordage Co.* (1990) 221 Cal.App.3d 882, 886–887 [271 Cal.Rptr. 20].)" (*Black Diamond Asphalt, Inc. v. Superior Court, supra,* 114 Cal.App.4th at p. 116.) Black Diamond, however, was not an insurer, the court held, "and its retention limit [was] not insurance available to it. [Citations.]" (*Id.* at p. 118.)

Nutrilite asserts that *Black Diamond Asphalt, Inc. v. Superior Court, supra,* 114 Cal.App.4th 109, dictates the answer in the case before us because Nutrilite had a self-insured retention, just as did Black Diamond. Therefore, Nutrilite reasons, it is no more an "insurer" within the meaning of Insurance Code section 1063.1, subdivision (c)(5) than was Black Diamond. However, there are critical distinctions between the two cases that Nutrilite overlooks.

Black Diamond was not an employer providing workers' compensation insurance coverage for an injured employee plaintiff. Rather, Black Diamond, as a purported employer, was itself being sued along with the trucker, its purported employee, and was seeking indemnity from that individual. Unlike the situation before us, and the one in *Denny's Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.4th 1433, where workers' compensation insurance coverage was at issue, there was no statutory scheme requiring Black Diamond to provide insurance with respect to the trucker plaintiff. (See Lab. Code, § 3700, subds. (a) & (b) [requiring a private employer to obtain either workers' compensation insurance or a certificate of consent to self-insure from the Director of Industrial Relations]; *Denny's Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.4th at p. 1439.)

The significance of these factual distinctions was highlighted in *Denny's Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.4th 1433, wherein the court stated: "[W]hile a self-insured employer may not be an 'insurer' when it protects itself against general civil liabilities [citation], an employer is expressly deemed an 'insurer' if issued a certificate to self-insure for workers' compensation. (Lab. Code, § 3211.) It reasonably follows that the workers' compensation liability protection an employer provides itself under the self-insurance program is a class of 'insurance.' " (*Id.* at p. 1441.)[4]

Contrary to Nutrilite's assertion, the situation in *Black Diamond Asphalt, Inc. v. Superior Court, supra,* 114 Cal.App.4th 109 was not "exactly" the

---

[4] As a technical point, we observe that Nutrilite does not state that it has been issued a certificate of consent to self-insure from the Director of Industrial Relations. However, as indicated at the outset, it has admitted to being "authorized as a self-insured entity for purposes of providing general workers' compensation insurance benefits to its employees." It is bound by that admission. (*Srithong v. Total Investment Co.* (1994) 23 Cal.App.4th 721, 725, fn. 2 [28 Cal.Rptr.2d 672].)

same as the one before us, just because both cases have to do with a self-insured retention. *Black Diamond Asphalt, Inc. v. Superior Court, supra,* 114 Cal.App.4th 109, is distinguishable from both this case and *Denny's Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.4th 1433, for the reasons we have stated, and is of no assistance to Nutrilite.

### (6) *Conclusion*

■ *Denny's Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.4th 1433, answers the question before us. Nutrilite, as an authorized self-insurer for the purpose of providing workers' compensation insurance, is deemed to be an "insurer" providing "other insurance" within the meaning of Insurance Code section 1063.1, subdivision (c)(9). Therefore, its claim is excluded as a "covered claim" and CIGA is not responsible for the amounts Nutrilite paid to Roth in workers' compensation benefits. "The Legislature did not establish the CIGA to protect [the employer] as a self-insurer, but rather, to protect [the employee] as a member of the insured public by ensuring [the employee] received a full disability award. [Citations.]" (*Denny's Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.4th at p. 1442.)

Also, as L.A. Door emphasizes, *Denny's Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.4th 1433, as the most current opinion on the topic emanating from the Fifth District, serves to resolve the previous split of authority between that district and the Third District.

### C. *Direct Action Against L.A. Door*

Nutrilite argues that, even if this court holds it has no avenue of recovery against CIGA, it can still proceed directly against L.A. Door. Nutrilite is in error.

■ As case law clearly shows, when a claim against CIGA is not a "covered claim," the claimant cannot pursue an action for indemnity against the insured whose insurer is insolvent. Otherwise, an "indemnity action would . . . permit [the party bringing the action] to be an indirect conduit to the same insurers who are barred from receiving such indemnity directly. Such a result does not comport with the statutory scheme . . . ." (*Collins-Pine Co. v. Tubbs Cordage Co.* (1990) 221 Cal.App.3d 882, 887–888 [271 Cal.Rptr. 20]; see also *E. L. White, Inc. v. City of Huntington Beach* (1982) 138 Cal.App.3d 366 [187 Cal.Rptr. 879].)

## III

## DISPOSITION

The judgment is affirmed. L.A. Door shall recover its costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.